IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
CASE NO. 8:17-cv-01890-CEH-JSS

JOHN NORTHRUP, Individually and on behalf
of a Class of Similarly Situated Individuals,

    Plaintiff,

vs.

David E. Lindsey; Independent Truckers Group, Inc.;
Agentra, LLC; Hooray Health, LLC; and
MyHealthPass, LLC

    Defendants.
_____/

**FIRST AMENDED CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL, INJUNCTIVE RELIEF SOUGHT**

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiff John Northrup, on behalf of himself and all others similarly situated, files his First Amended Class Action Complaint, and alleges and avers as follows:

**INTRODUCTION**

1.    Plaintiff brings this First Amended Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of (1) David E. Lindsey; (2) Independent Truckers Group, Inc.; (3) Agentra, LLC; (4) Hooray Health, LLC; and (5) MyHealthPass, LLC ("Defendants"), in negligently, and/or willfully contacting Plaintiff through SMS or "text" messages on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to his own acts and experiences, and, as to all other matters, upon information and belief, including

investigation conducted by his attorneys.

## PARTIES

2. Plaintiff John Northrup is an individual who resides in Hillsborough County, Florida.

3. Defendant David E. Lindsey ("Lindsey"), is an individual Texas citizen residing in Texas, doing business at 15280 Addison Road, Suite 250, Addison, Texas 75001. He may be served at that address. He is registered with the Texas Department of Insurance as a general lines agent at that same address.

4. Defendant, Independent Truckers Group, Inc. is a company with headquarters at 15280 Addison Road, Suite 250, Addison, Texas 75001, and/or 3997 Highway 57, Ste 4, Rossville, TN 38066-5381. It may be served by serving David E. Lindsey at 15280 Addison Road, Suite 250, Addison, Texas 75001. It may also be served by serving its registered agent for service, David M. Brown at 1755 Kirby Pkwy, Ste. 300, Memphis, TN 38120-4398.

5. Agentra, LLC is a Texas corporation doing business at 2150 S. Central Expressway, Suite 200, McKinney, Texas. Its manager is David E. Lindsey. It can be served through its registered agent for service, Judge A. Platt at 1201 N. Riverfront Blvd., Suite 150, Dallas, Texas 75207.

6. Hooray Health, LLC is a Texas corporation doing business at 2150 S. Central Expressway, Suite 200, McKinney, Texas. Its manager is David E. Lindsey. It can be served through its registered agent for service, Judge A. Platt at 1201 N. Riverfront Blvd., Suite 150, Dallas, Texas 75207.

7. MyHealthPass, LLC is a Texas corporation doing business at 14785 Preston Rd. Suite 795, Dallas TX 75254-7876. Its manager is David E. Lindsey. It can be served through its

registered agent for service, David E. Lindsey at 15280 Addison Road, Suite 250, Addison, Texas 75001. It also does business under the name, "State Health Exchange."

8. David E. Lindsey and all corporate Defendants are jointly and severally liable for the acts alleged herein because Lindsey owns, operates and controls all companies and directs their unlawful marketing efforts using unsolicited text messages in violation of federal law.

9. David E. Lindsey signed the sublease with Aerospace Insurance Managers, Inc., for the 15280 Addison Road, Ste 250, Addison, Texas office. This was the office address of Independent Trucking Group listed on its website, until it was served with this lawsuit and changed the address on its website from the Addison, Texas office to an office in Tennessee.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action and all the Defendants pursuant to 28 U.S.C. § 1331 in that this action arises under a United States federal statute, specifically the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA"). The TCPA specifically authorizes this Court to exercise jurisdiction.

11. Jurisdiction is also proper under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000 and is between citizens of different states. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff seeks up to $1,500 in damages for each text message in violation of the TCPA, which, when aggregated among a proposed class number of more than five thousand, exceeds the $5,000,000 threshold for federal court jurisdiction. Further, Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendants, providing jurisdiction under 28 U.S.C. Section 1332(d)(2)(A). Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and/or (b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District, in that the text message at issue was sent to a mobile phone number registered in this District.

**JOINT AND SEVERAL LIABILITY, ALTER EGO,
PIERCING THE CORPORATE VEIL**

13. Defendants operate under several names, including: "Independent Truckers Group," "Independent Truckers Group, Inc." "ITG Trucking," "Agentra Health"; "Agentra, LLC"; "Hooray Health, LLC"; "Hooray Healthcare"; and "MyHealthPass, LLC."

14. They market insurance and other services to trucking companies throughout the country from their office at 15280 Addison Road, Suite 250, Addison, Texas 75001. They operate the website www.itgtrucking.com. After being served with this lawsuit, they changed the Addison address listed on their website in an attempt to mislead the public and the victims of their unlawful text message advertising campaign.

15. The Court should impose liability on Lindsey and all Defendants by disregarding the structure of Defendants as separate corporations and piercing the corporate veil under the theories of single business enterprise, alter ego, and sham to perpetrate a fraud.

16. The corporate form of Defendants has been used as part of a basically unfair device to achieve an inequitable result, including to perpetrate a fraud, evade an existing obligation, circumvent a statute, protect a crime, or justify wrong.

17. Defendants were organized and operated as a mere tool or business conduit of Lindsey and all Defendants must be treated as alter egos. Holding only one of Lindsey's companies liable would result in injustice.

18.     The alter ego doctrine applies because there is such unity between Lindsey and his companies that the separateness has ceased and holding only one company liable would result in injustice.

19.     Defendants are also jointly liable under the "sham to perpetrate a fraud" doctrine because recognizing the separate corporate existence of Defendants would bring about an inequitable result due to the injustice or unfairness to Plaintiff and the class members caused by the corporation and its owners. Lindsey's unlawful text messaging campaign does not identify the entity sending the text messages, and the person designated to answer phone calls in response to the unlawful text messages refuses to identify which company is behind the campaign.

20.     Lindsey is guilty of constructive fraud because his conduct in setting up Defendants as sham companies has the tendency to deceive others, to violate confidence, and/or to injure public interests.

21.     Adherence to the fiction of the separate existence of Defendants as entities distinct from each other will permit an abuse of the corporate privilege and would sanction fraud and promote injustice. The statutory damages plus attorneys' fees and potential punitive damages, may exceed the ability on any individual Defendant to pay a judgment entered in this case. Because Lindsey established Defendants to conduct his unlawful text message marketing campaign, and because he owns 100% of all Defendants, has ultimate control of all operations of all Defendants, and is free to shift money between the companies without any limitation, it would create an injustice to allow Lindsey and his companies to escape liability for Lindsey's actions.

## GENERAL ALLEGATIONS

22.     Defendants made the deliberate decision to engage in bulk marketing by sending

truckers, including the Plaintiff, advertisements through Short Message Services. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages.

23. An "SMS message" is a text message directed to a wireless device through the use of the telephone number assigned to the device. For purposes of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), a text message is considered to be a call. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115, ¶ 165 (2003) ("2003 TCPA Order").

24. When an SMS or "text" message call is successfully made, the recipient's cell phone rings or otherwise notifies the recipient of the text message that a text message is being received.

25. As cellular telephones are inherently mobile and are carried by their owners at all times, text messages are received by the called party virtually anywhere.

26. Unlike standard advertising methods, bulk advertising by use of text messages cost recipients money, because cell phone users typically pay for the text messages they receive, either individually, or in bulk.

27. Over the course of an extended period beginning no later than in 2015, Defendants and their agents directed the mass transmission of text messages to the cell phones of persons they hoped were potential customers of Defendants' services.

28. On June 30, 2017, at 2:40 pm Eastern time, Plaintiff received an unsolicited SMS or "text" message to his wireless phone in Florida. The text was sent to his wireless phone number with area code 813 (the area code for Tampa, Florida and surrounding areas). It stated:

> Hate the high price of Obama Care? Call for a free $250 rewards card and free healthcare quote. TRUCKER plans start less than $59 a month. 214-396-6822

29. Although Defendants are located in Texas. They sent the text message from an automatic texting service that uses a phone number with area code 208, which is in Idaho. Plaintiff called the phone number listed in the text message and spoke to a representative of Defendants, Donna Morgan, who said that the text message was sent on behalf of Independent Truckers Group, the largest independent truckers group in America. Plaintiff asked the representative how Defendants' obtained his phone number and the representative immediately terminated the call. Accordingly, it appears that Defendants know that their text message campaign is illegal.

30. Independent Truckers Group operates the website www.itgtrucking.com. The website states that it is copyrighted 2017 by Independent Truckers Group Inc., but no such entity is registered with the Texas Secretary of State or the Texas Department of Insurance.

31. Independent Truckers Group's website listed its address as 15280 Addison Road, Suite 250, Addison, Texas 75001, and uses a Dallas, Texas phone number with area code (214). After the filing of this lawsuit, it changed the address listed on its website to 1755 n. Kirby Parkway, Suite 300, Memphis, Tennessee, 33120.

32. Plaintiff provided no consent to receive this text message, which was sent by Defendants in an effort to promote the sale of their health insurance plans to truck drivers.

33. The unsolicited text messages placed to Plaintiff's cellular telephone was placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1).

34. "The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any

7

person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a)(5).

35. "The term 'telephone solicitation' means the initiation of a . . . message for the purpose of encouraging the purchase . . . of . . . services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." 47 U.S.C. § 227 (a)(4).

36. The telephone numbers that the Defendants, or their agents, sent the text messages to were assigned to cellular telephone services pursuant to 47 U.S.C. § 227(b)(1)(A)(iii).

37. These telephone text messages constituted "calls" under the TCPA that were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i) and applicable regulations which make clear that texts are included within the TCPA.

38. Plaintiff did not provide Defendants or their agents prior express consent to receive unsolicited text messages pursuant to 47 U.S.C. § 227 (b)(1)(B).

39. The text message by Defendants or their agents therefore violated 47 U.S.C. § 227(b)(1).

40. Plaintiff, John Northrup, has standing to bring these claims because Defendants' violation of the TCPA resulted in a concrete and particularized injury to him, in the form of invasion of privacy, an unwanted and unauthorized text message received by his cell phone, which caused wasted time addressing an unwanted text message, unwarranted distraction from his work activities (including driving large trucks, and loading and unloading products), aggravation and distress, unavailability of his cell phone when it was receiving the unauthorized text message, depletion of his cell phone's battery and the resulting cost to recharge the phone,

and potential financial loss in the form of increased charges from his cell phone carrier.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated ("the Class").

42. Plaintiff represents, and is a member of the Class, consisting of: all persons within the United States who received an unsolicited SMS or text message from a Defendant, or an agent of a Defendant, on a paging service, cellular phone service, or other service, through the use of any automatic telephone dialing system as set forth in 47 U.S.C. Section 227(B)(1)(A)(3) or artificial or prerecorded voice, which SMS or text messages by a Defendant (or agent of a Defendant) was not made for emergency purposes or with the recipients' prior express consent, within the four years prior to the filing of this Complaint.

43. Defendants and their employees or agents are excluded from the Class.

44. Plaintiff does not know the number of members in the Class, but believes the Class members number in the thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

45. Plaintiff and members of the Class were harmed by the acts of Defendants in at least the particularized and concrete ways set forth above.

46. This suit seeks only statutory damages and injunctive relief on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

47. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court.

48. The Class can be identified through Defendants' records or Defendants' agents'

records.

49. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.

50. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

    a. Whether, within the four years prior to the filing of this Complaint, Defendants or their agents placed cellular telephone SMS or text messages for purposes of soliciting new customers without the recipients' prior express consent;

    b. What systems and methodologies were used to collect the cell phone numbers, and send the text messages at issue in this case;

    c. Whether the systems used to place the cellular telephone SMS or text messages constituted automatic telephone dialing systems under the TCPA;

    d. Whether either Defendants' violation of the TCPA was willful or knowing, such that the award should be increased up to three times pursuant to 47 USC §227(b)(3)(c); and

    e. Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

51. As a person who received at least one unsolicited telephone SMS or text message without his prior express consent, Plaintiff is asserting claims that are typical of the Class.

52. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

53. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendants' unlawful and wrongful conduct.

54. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct.

55. Because of the size of the individual Class member's claims, few, if any, Class members could not afford to individually seek legal redress for the wrongs complained of herein.

56. Plaintiff has retained counsel experienced in handling class action claims of this nature.

57. A class action is a superior method for the fair and efficient adjudication of this controversy.

58. Class-wide damages are essential to induce Defendants to comply with federal law.

59. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual action for violation of the TCPA are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many individual claims.

60. Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

61. The members of the Class are capable of being readily ascertained from the information and records in the possession or control of Defendants.

62. The Class members are so numerous that individual joinder of all members is impractical.

63. Plaintiff's claims are typical of those of the Class and are based on the same legal

and factual theories.

64. Plaintiff and his counsel will fairly and adequately represent and protect the interests of the Class. Plaintiff has been subject to the same unlawful acts as the rest of the Class members and is ready, willing and able to serve as a Class representative. Moreover, Plaintiff's counsel are experienced in handling complex litigation, and have extensive class action experience and a long track record of successful prosecution of class action cases. Neither Plaintiff nor his counsel has any interest that might cause them not to vigorously pursue this action.

65. Certification of a Class under Fed. R. Civ. P. 23(b)(3) is appropriate in that Plaintiff and the Class members seek liquidated statutory monetary damages, common questions predominate over any individual questions, and a class action is superior for the fair and efficient adjudication of this controversy. A class action will cause an orderly and expeditious administration of the Class members' claims and economies of time, effort and expense will be fostered and uniformity of decisions will be ensured. Moreover, the individual Class members are unlikely to be aware of their rights and not in a position (either through experience or financially) to commence individual litigation against Defendants.

66. Alternatively, certification of a class is appropriate under Fed. R. Civ. P. 23(b)(1), in that inconsistent or varying adjudications with respect to individual members of the Class would establish incompatible standards of conduct for Defendants or adjudications with respect to individual members of the Class as a practical matter would be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.

67. Alternatively, certification of a class is appropriate under Fed. R. Civ. P. 23(b)(2)

because the parties opposing the Class have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief appropriate respecting the Class as a whole.

## FIRST CAUSE OF ACTION
## NEGLIGENT VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ

68. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

69. Each such text message call was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, or a system that otherwise qualified as an automatic telephone dialing system under the TCPA. By using such equipment, Defendants were able to effectively send thousands of text messages simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention. These text messages were sent without the prior express consent of the Plaintiff and the other members of the Class to receive such text messages.

70. The foregoing acts and omissions of Defendants and their agents constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq*. As a result of Defendants', and Defendants' agents', negligent violations of 47 U.S.C. § 227 *et seq*., Plaintiff and the Class are entitled to an award of $500.00 each in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B). Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class

members the following relief against Defendants:

    a. As a result of Defendants,' and Defendants' agents,' negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500.00 in statutory damages, per violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

    b. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

    c. As a result of Defendants', and Defendants' agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member increased damages, as provided by statute, up to $1,500.00 per violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

    d. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

    e. Any other relief the Court may deem just and proper.

## SECOND CAUSE OF ACTION
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ.

71.    Plaintiff incorporates by reference all of the above paragraphs 1-55 of this Complaint as though fully stated herein.

72.    Upon information and belief, Defendants' violations of the TCPA were willful and/or knowing. Accordingly, Plaintiff and the Class are entitled to have their awards increased to an amount not more than three times the $500 liquidated damages amount, or $1,500.00 per violation, pursuant to 47 U.S.C. § 227(b)(3)(B and C).

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendants: As a result of Defendants', and Defendants'

agents', willful violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $1,500.00 in statutory damages, per violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

    a. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

    b. As a result of Defendants,' and Defendants' agents,' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member increased damages, as provided by statute, up to $1,500.00 per violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

    c. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

    d. Reasonable and necessary attorneys' fees and expenses.

    e. Any other relief the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 3, 2017            Respectfully submitted,

                                            /s/ Cory S. Fein
                                            Cory S. Fein (*Pro Hac Vice*)
                                            E-mail: cory@coryfeinlaw.com
                                            CORY FEIN LAW FIRM
                                            712 Main St., #800
                                            Houston, TX  77002
                                            Telephone:  (281) 254-7717
                                            Facsimile:  (530) 748-0601

>Seth M. Lehrman (Fla. Bar No. 132896)
>E-mail: seth@pathtojsutice.com
>FARMER, JAFFE, WEISSING,
>EDWARDS FISTOS & LEHRMAN, P.L.
>425 North Andrews Avenue, Suite 2
>Fort Lauderdale, FL 33301
>Telephone: (954) 524-2820
>Facsimile: (954) 524-2822
>
>*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that this First Amended Complaint was filed via this Court's ECF system on October 3, 2017, and thereby served on all counsel of record.

>/s/ Cory S. Fein
>Cory S. Fein