**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| JOHN NORTHRUP, Individually and on behalf of a Class of Similarly Situated Individuals<br><br>Plaintiff,<br><br>v.<br><br>Innovative Health Insurance Partners, LLC, CyberX Group, LLC, David E. Lindsey; and Independent Truckers Group, Inc.;<br><br>Defendants. | §§§§§§§§§§§§§<br><br>Civil Action No. 8:17-cv-01890-CEH-JSS<br><br>DISPOSITIVE MOTION |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Innovative Health Insurance Partners, LLC, CyberX Group, LLC, David E. Lindsey, and Independent Truckers Group, Inc. (collectively, "Defendants"), pursuant to M.D. Fla. Local Rule 3.01(a) & (h), Federal Rule of Civil Procedure 56(c) and other applicable authority, hereby move for summary judgment and would respectfully show as follows:

**I.
INTRODUCTION**

Plaintiff brought this action against Defendants for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), alleging that Defendants sent text messages to Plaintiff and his proposed class through the use of an "automatic telephone dialing system" ("ATDS").

Defendants are entitled to summary judgment for the simple reason that these text messages at issue were not sent with an ATDS, which the TCPA defines as "equipment which

has the capacity -- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

In view of *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. Mar. 16, 2018) ("*ACA*"), there can be no dispute that (1) "capacity" excludes inquiry into a device's "potential functionalities" and "future possibility"[1] and (2) dialing "random or sequential number[s]" requires *more* than just dialing a set list of numbers.[2]

Thus, a device qualifies as an ATDS only if the device, *without any additional effort,* can generate and dial random or sequential telephone numbers.

Because the platform used by Defendant CyberX cannot store or produce phone numbers to be called using a random or sequential number generator (and by extension could not dial such numbers), the alleged texts were not sent using an ATDS, and Defendants are entitled to summary judgment as a matter of law.

## II.
## STATEMENT OF MATERIAL UNDISPUTED FACTS

1. Defendant CyberX Group, LLC ("CyberX") caused the text message at issue in this matter, *i.e.*, the one described by paragraphs 32-33 of the Second Amended Complaint [D.E. 38], to be sent through the Twilio Platform. (Pearson Decl., which is attached to this motion for summary judgment as **Exhibit A**, at ¶ 2.)

2. The Twilio Platform is a web-based software application which, as utilized by CyberX, allows a user to direct the Twilio Platform to send text messages to specific phone numbers provided by the user. (*Id*. ¶ 3.)

---

[1] *See id*. at 695-700 (rejecting FCC's determination that "capacity of calling equipment includes its potential functionalities or future possibility, not just its present ability.")
[2] *See id*. at 702 ("'dialing random or sequential numbers' cannot simply mean dialing from a set list of numbers in random or other sequential order," otherwise the statutory language would be rendered superfluous).

3. The Twilio Platform did not generate the phone numbers for any of the text messages dispatched on June 30, 2017. (*Id*. ¶ 4.)

4. Rather, the phone numbers to which CyberX directed the Twilio Platform to send text messages on June 30, 2017 (which includes Plaintiff's alleged phone number) were purchased from FleetSeek by CyberX and provided to the Twilio Platform by CyberX. (*Id*. ¶ 5.)

5. The Twilio Platform cannot generate telephone numbers, nor could its users modify the Twilio Platform to generate telephone numbers. (*Id*. ¶ 6.)

6. Each and every text message sent by the Twilio Platform requires a separate instruction comprising (1) the Twilio number from which the message should originate; (2) the body of the message; (3) and the telephone number to which the user wants that text message sent. (*Id*. ¶ 7.)

7. CyberX agreed to the Twilio's Terms of Service as a condition of using the Twilio Platform. (*Id*. ¶ 8.)

8. Twilio's Terms of Service prohibits reverse engineering of the Twilio Platform. (Lin Decl., which is attached to this motion for summary judgment as **Exhibit B**, at Ex. 1 § 6(e).)

### III.
### LEGAL STANDARD

A summary judgment motion is intended "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). Federal Rule of Civil Procedure 56(a) provides that a court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." However, not every factual dispute defeats summary judgment; the requirement is that "there be no genuine issue of *material fact*." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A

"material" fact is one that "might affect the outcome of the suit under the governing law." *Id*. at 248

## IV.
## ARGUMENT

Plaintiff's TCPA causes of action both require showing that the alleged text was sent using an ATDS. Because the text was not sent using an ATDS, Plaintiff's claims fail as a matter of law.

**A.**     *ACA* **controls the definition of ATDS.**

Since the TCPA's enactment in 1991, the Federal Communications Commission ("FCC" or "Commission") has issued multiple contradictory orders addressing the definition of "ATDS." In 1992, the Commission, following the plain language, declared that equipment where "numbers called are not generated in a random or sequential fashion" did not qualify as an ATDS. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, ¶ 47 (1992). And in 1995, the Commission explained that the TCPA's ATDS provisions did not apply to calls "directed to [a] specifically programmed contact numbe[r]" rather than "to randomly or sequentially generated numbers." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, ¶ 19 (1995).

But subsequent Commission orders promulgated ambiguous and conflicting interpretations of the term "ATDS." A 2003 Commission order defined ATDS as encompassing equipment that "has the capacity to store or produce numbers and dial those numbers at random,

in sequential order, or from a database of numbers," or, even more broadly, equipment that merely has "the capacity to dial numbers without human intervention."[3]

Finally, in 2015, the Commission distorted the definition of ATDS even further by concluding that the "capacity" of a device to perform a given function included its "potential functionalities," such as those that could be added to or reprogrammed on a device. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, ¶ 16 (2015) ("2015 Order").

On March 16, 2018, the D.C. Circuit decided *ACA*, which "set aside the Commission's explanation of which devices qualify as an ATDS" as arbitrary and capricious. *ACA*, 885 F.3d at 695. This Court has previously recognized that it considers the *ACA* holding to be binding. Specifically, this Court decided a motion to stay pending *ACA* expressly holding that "if the D.C. Circuit Court were to vacate (or uphold) one or more of the challenged FCC interpretations, this Court *could not instead continue to follow* the FCC's now-vacated (or not follow the FCC's now-affirmed) interpretations in resolving Plaintiff's claims." *Silwa v. Bright House Networks, LLC*, No. 2:16-cv-235, 2016 U.S. Dist. LEXIS 93852, at *8 (M.D. Fla. July 19, 2016) (emphasis added) (citing *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008)). In sum, the D.C. Circuit's invalidation of the FCC's ATDS interpretation applies the Eleventh Circuit as well as this Court.

As *ACA* explains, an ATDS is defined as "equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). "That definition naturally raises two

---

[3] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 131-133 (2003) ("2003 Order"). The FCC also issued orders in 2008 and 2012 affirming the 2003 Order. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 5594, ¶¶ 12–14 (2008); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 15391, ¶ 2 n.5 (2012).

questions: (i) when does a device have the 'capacity' to perform the two enumerated functions [in § 227(a)(1)(A) and (B)]; and (ii) what precisely are those functions?" *ACA*, 885 F.3d at 695.

B.     *ACA* **limits the scope of "capacity" to exclude functionalities added by software.**

For the first question, *ACA* instructs that a device has the "capacity" to do something only if it has the ability without additional effort (beyond, *e.g.*, flipping a switch), and that the Commission's broader definition was "utterly unreasonable." *Id*. at 699. In particular, *ACA* instructs that "the question whether equipment has the 'capacity' to perform the functions of an ATDS" turns on "considerations such as how much is required to enable the device to function as an autodialer: does it require the simple flipping of a switch, or does it require essentially a top-to-bottom reconstruction of the equipment?" *Id*. at 696.

Further guidance on what constitutes capacity comes from *ACA*'s reasoning in rejecting the Commission's "expansive interpretation of capacity": that it would have "the apparent effect of embracing any and all smartphones." *Id*. at 696. *ACA* found it "undisputed that essentially any smartphone, with the addition of software, can gain the statutorily enumerated features of an autodialer and thus function as an ATDS," noting the 2015 Order "did not question" Commissioner Pai's observation that "it's trivial to download an app, update software, or write a few lines of code that would modify a phone to dial random or sequential numbers." *Id*.

*ACA* thus holds the TCPA cannot be construed in a manner where "ATDS" would encompass every smartphone. *Id*. at 697 ("The TCPA cannot reasonably be read to render every smartphone an ATDS subject to the Act's restrictions, such that every smartphone user violates federal law whenever she makes a call or sends a text message without advance consent."); *Id*. at 698 ("It cannot be the case that every uninvited communication from a smartphone infringes federal law, and that nearly every American is a TCPA violator-in-waiting, if not a violator-in-

fact."). Consequently, "capacity" must exclude functions only available after downloading software or writing additional code.

C.  *ACA* **limits the scope of "randomly or sequentially generated numbers" to exclude set lists of numbers.**

For the second question, the TCPA's language is clear—a device must have the capacity to automatically generate and call random or sequential numbers, and there is zero reason to depart from the statute's plain meaning. This plain meaning excludes dialing numbers from a set list. As *ACA* explains, "[a]nytime phone numbers are dialed from a set list, the database of numbers must be called in some order—either in a random or some other sequence." *Id*. at 702. Consequently, "'dialing random or sequential numbers' *cannot simply mean dialing from a set list of numbers* in random or other sequential order: if that were so, there would be no difference between 'dialing random or sequential numbers' and 'dialing a set list of numbers.'" *Id*. (emphasis added).[4]

Decisions after *ACA* reach the same conclusion. *Herrick v. GoDaddy.com LLC*, No. CV-16-00254, 2018 U.S. Dist. LEXIS 83744, at *19 (D. Ariz. May 14, 2018) ("Broadening the definition of an ATDS to include any equipment that merely stores or produces telephone numbers in a database would improperly render the limiting phrase 'using a random or sequential number generator' superfluous.").

This interpretation of "random or sequential number generator" as excluding numbers from a set list is reinforced by *ACA*'s holding that "[t]he TCPA cannot reasonably be read to

---

[4] This interpretation is far from novel—even courts prior to *ACA* reached the same conclusion. *See*, *e.g.*, *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1291 (S.D. Cal. 2014) ("'Random or sequential number generator' cannot reasonably refer broadly to any list of numbers dialed in random or sequential order, as this would effectively nullify the entire clause. If the statute meant to only require that an ATDS include any list or database of numbers, it would simply define an ATDS as a system with 'the capacity to store or produce numbers to be called'; 'random or sequential number generator' would be rendered superfluous."); *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 725 (N.D. Ill. 2011) ("'Random number generation' means random sequences of 10 digits, and 'sequential number generation' means (for example) (111) 111-1111, (111) 111-1112, and so on.").

render every smartphone an ATDS subject to the Act's restrictions." *ACA*, 885 F.3d at 697. This is because every smartphone—straight out of the box—can text numbers from a set list by sending a group text message. If the mere ability to text a list of numbers qualified a device as an ATDS, then every smartphone would be an ATDS, *the exact result proscribed by the D.C. Circuit*. Lest there be any doubt, *ACA* even cites this exact hypothetical of sending group messages as one of the "anomalous outcomes … bottomed in an unreasonable, and impermissible, interpretation" of the TCPA:

> Imagine, for instance, that a person wishes to send an invitation for a social gathering to a person she recently met for the first time… *And if she sends a group message inviting ten people to the gathering*, again without securing prior express consent from any of the recipients, she not only would have infringed the TCPA ten distinct times but would also face a minimum damages recovery against her of $5,000.

*Id*. (emphasis added). In sum, under the plain meaning of the statutory language and *ACA*'s guidance, a device with the capacity to text a list of numbers does not qualify as an ATDS.

**D.     The Twilio platform used by Defendant CyberX is not an ATDS as a matter of law.**

Plaintiff's TCPA cause of action is premised on the allegation that "Defendants were able to effectively send thousands of text messages simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention." (2d Am. Compl. [D.E. 38], ¶ 73.) Likewise, Plaintiff's motion for class certification alleges that "Defendants obtained a database of truck drivers' mobile phone numbers and engaged in a text message advertising campaign trying to sell their services to the truck drivers in the database." (Dkt. 54 at 1.); *see also* SMF ¶ 4 (phone numbers purchased from FleetSeek).[5]

In other words, Plaintiff only alleges that Defendants texted a set list of numbers, not numbers produced by a random or sequential number generator. This is no surprise, because the

---

[5] "SMF" refers to the Statement of Material Undisputed Facts.

equipment used by Defendant CyberX can only message a set list of numbers—it simply does not have the capacity to text random or sequentially generated numbers.

Specifically, CyberX caused a web-based software platform called Twilio to send the text messages at issue. SMF ¶¶ 2-4. Twilio only allows users to send text messages to specific, identified phone numbers inputted into the platform and is incapable of sending texts to random or sequentially generated phone numbers. SMF ¶ 6. The platform simply lacks the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. SMF ¶ 5.

The facts here are undisputed and essentially identical to the ones in *Herrick*, which found that the "[n]umbers that were called could only be inputted into the 3Seventy Platform by a preprogrammed file or list provided by the user; the Platform could not randomly or sequentially generate these numbers by itself." *Herrick*, 2018 U.S. Dist. LEXIS 83744, at *20. For purposes of this Motion, Twilio functions identically to the 3Seventy Platform described in *Herrick*.

Plaintiff may argue that an issue of fact exists regarding the amount of effort required to modify Twilio to randomly or sequentially generate numbers. However, this argument has no merit.

First, as explained above, *ACA* holds that "capacity" only encompasses trivial actions ("touching a button" or "flipping of a switch") and excludes actions such as adding software or modifying code. *See ACA*, 885 F.3d at 898. Because Twilio cannot text (let alone generate) random or sequential numbers simply by enabling an option in its user interface, it cannot be an ATDS as a matter of law.

Second, regardless where *ACA* draws the line for "capacity," no issue of fact exists because it would have been impossible for Defendants to modify Twilio in any fashion, due to both practical and legal reasons. Fundamentally, the Twilio Platform imposes an absolute requirement that each text message requires a separate instruction comprising (1) the Twilio number from which the message should originate; (2) the body of the message; (3) and the telephone number to which the user wants that text message sent, rendering it impossible for any user to modify it to generate phone numbers. SMF ¶¶ 5-6. And even if it was theoretically possible to modify the Twilio Platform, Twilio's terms of service, which all users including CyberX agree to, prohibit reverse engineering the Twilio Platform. SMF ¶¶ 7-8; *cf. Herrick*, 2018 U.S. Dist. LEXIS 83744, at *20 ("As such, a user of the 3Seventy Platform, even if armed with the programming knowledge necessary to enable it to generate numbers randomly or sequentially, would not be able to do so without the permission of 3Seventy's CEO.")

In sum, in view of the interpretation of ATDS established by *ACA*, Defendants could not have utilized an ATDS as a matter of law, and summary judgment must be granted.

## V.
## CONCLUSION

WHEREFORE, Defendants request that this Court grant Defendants' Motion for Summary Judgment and all other relief at law and equity to which they are entitled.

Date: June 26, 2018

Respectfully Submitted,

*s/ Bill S. Richmond*
WILLIAM S. RICHMOND, ESQ. (Trial Counsel)
Texas Bar No. 24066800 (Admitted *Pro Hac Vice*)
**PLATT CHEEMA RICHMOND PLLC**
1201 N. Riverfront Blvd., Suite 150
Dallas, Texas 75207
Telephone: 214.559.2700
Facsimile:  214.559.4390
brichmond@pcrfirm.com

-and-

*s/ David J. DePiano*
DAVID J. DePIANO, ESQ.
Florida Bar No. 0055699
**SHAPIRO BLASI WASSERMAN & HERMANN, P.A.**
7777 Glades Road, Suite 400
Boca Raton, FL 33434
Telephone: 561.477.7800
Facsimile: 561.477.7722
ddepiano@sbwh.law

**COUNSEL FOR DEFENDANTS
INNOVATIVE HEALTH INSURANCE PARTNERS, LLC; CYBERX GROUP, LLC; DAVID E. LINDSEY; AND INDEPENDENT TRUCKERS GROUP, INC.**

## CERTIFICATE OF SERVICE

  The undersigned counsel for Defendants hereby certifies that on June 26, 2018, the foregoing document is being sent via Electronic Mail (CM/ECF) to Plaintiff's counsel as listed on the attached Service List.

               *s/ David J. DePiano*
               DAVID J. DePIANO, ESQ.
               Florida Bar No. 0055699
               **SHAPIRO BLASI WASSERMAN & HERMANN, P.A.**
               7777 Glades Road, Suite 400
               Boca Raton, FL 33434
               Telephone: 561.477.7800
               Facsimile: 561.477.7722
               ddepiano@sbwh.law

               **COUNSEL FOR DEFENDANTS**
               **INNOVATIVE HEALTH INSURANCE PARTNERS, LLC; CYBERX GROUP, LLC; DAVID E. LINDSEY; AND INDEPENDENT TRUCKERS GROUP, INC.**

## SERVICE LIST

Cory S. Fein
712 Main St., Suite 800
Houston, TX, 77002
Telephone: (281) 254-7717
Facsimile: (530) 748-0601
E-mail: cory@coryfeinlaw.com

Seth M. Lehrman
425 North Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Facsimile: (954) 524-2822
Email: seth@epllc.com