UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN NORTHRUP, individually and on
behalf of a class of similarly situated
individuals,

    Plaintiff,

v.                                                               Case No: 8:17-cv-1890-T-36JSS

Innovative Health Insurance Partners, LLC;
CyberX Group, LLC; David E. Lindsey; and
Independent Truckers Group, Inc.,

    Defendants.
_____/

# **ORDER**

    This cause comes before the Court upon Plaintiff's Motion for Class Certification (Doc. 54), Defendants' response in opposition (Doc. 59), and Plaintiff's reply (Doc. 62), as well as Plaintiff's Supplement[1] to Motion for Class Certification (Doc. 74) and Defendants' response in opposition (Doc. 75). Plaintiff argues that this case is appropriate for class certification because it meets all of the requirements under Federal Rule of Civil Procedure 23. The Court, having considered oral arguments, the parties' submissions, and being fully advised in the premises, will grant Plaintiff's Motion for Class Certification.

    **I.    BACKGROUND**

    Plaintiff, John Northrup ("Plaintiff"), on behalf of himself and all others similarly situated, brings this action against Defendant Innovative Health Insurance Partners, LLC ("Innovative"), Defendant CyberX Group, LLC ("CyberX"), Defendant David E. Lindsey ("Lindsey"), and

---

[1] The Court ordered Plaintiff to file a supplemental submission following the hearing because the class definition was unclear and had been edited multiple times between oral argument and when Plaintiff filed his motion. *See* Doc. 71. The Court also allowed Defendants to file a response.

Defendant Independent Truckers Group, Inc. ("Independent Truckers") (collectively, "Defendants"), for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 *et seq*.

The Second Amended Complaint alleges the following factual allegations. Plaintiff received a text message on his cellular telephone on June 30, 2017 at 2:40 p.m. eastern time. Doc. 38 at ¶ 32. The text message read: "Hate the high price of Obama Care? Call for a free $250 rewards card and free healthcare quote. TRUCKER plans start less than $59 a month. 214-396-6822." Doc. 38 at ¶ 32. Plaintiff did not consent to receive the text message. Doc. 38 at ¶ 36. When he received it, he called the phone number listed therein. Doc. 38 at ¶ 33. Plaintiff spoke to a representative, who said that the text message had been sent on behalf of Independent Truckers. Doc. 38 at ¶ 33.

The text message was related to a healthcare product maintained by Independent Truckers. *See* Doc. 38 at ¶¶ 16-17. Independent Truckers had outsourced the functions related to the product to Innovative Health. Doc 38 at ¶ 17. Innovative, in turn, decided to market Independent Truckers and its healthcare product via text message. Doc. 38 at ¶ 17. To accomplish this, Innovative contracted with CyberX to execute the campaign and send the text message. Doc. 38 at ¶ 17. Innovative drafted the content of the text message, and CyberX sent the text message. Doc. 38 at ¶ 17. The text message was placed with an automatic telephone dialing system ("ATDS"). Doc. 38 at ¶ 37.

Plaintiff believes that thousands of people, if not more, received an unsolicited text message from Defendants through the use of an ATDS. Doc. 38 at ¶¶ 45-46, 48; Doc. 54 at p. 5; Doc. 74 at p. 2. Plaintiff proposes the following class:

> All cellular telephone subscribers in the United States who had a phone number listed in the Call Logs (filed at Docket Nos. 54-5 through 54-9), where the Call

Logs' entry for the phone number reflects that the June 30, 2017 "Obama Care" text message was "delivered" in the "Status" column; and where the phone number was assigned to a cell phone (as opposed to a landline or VoIP line) on June 30, 2017.

Doc. 74 at p. 1.

## II. LEGAL STANDARD

A district court has broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). A class action may be maintained only when it satisfies all of the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008). The initial burden of proof to establish the propriety of class certification rests with the Plaintiff. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

As a threshold issue, Plaintiff must demonstrate that the proposed class is "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). The party seeking to maintain the class action must affirmatively demonstrate his compliance with Rule 23. *Id.* The party must be prepared to prove that there are "*in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (emphasis in original). As explained in *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, Rule 23 "establishes the legal roadmap courts must follow when determining whether class certification is appropriate." 350 F.3d 1181, 1187 (11th Cir. 2003).

Under Rule 23(a), a class may be certified only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### III. DISCUSSION

#### a. Standing

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). *See also Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[P]rior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."). The plaintiff bears the burden of proving the three elements of standing: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Defendants argue that the proposed class improperly attempts to include individuals who may not have suffered a concrete injury. Because Plaintiff has not explained how it will satisfy standing for each proposed member, Defendants argue, Plaintiff fails to meet his burden. But Plaintiff need not show at this stage that every possible class member has standing. *See Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 691 (S.D. Fla. 2014) ("Defendant fails to direct the Court to any binding precedent requiring a district court to make a speculative determination on whether every putative class member can maintain Article III standing, and the Court is unable to locate the same. Some courts have found that the class should be defined in such a manner that anyone

4

within it would have standing. . . . While the Eleventh Circuit has not directly tackled the issue of whether a plaintiff must demonstrate that putative class members have Article III standing at the class certification stage, it has indicated that a district court must, at a minimum, be satisfied that at least one named plaintiff has Article III standing." (internal citations omitted)); *Coleman v. Cannon Oil Co.*, 141 F.R.D. 516, 524 (M.D. Ala. 1992) (citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974)) ("The defendants also suggest that each member of the plaintiff class must satisfy an individualized standing inquiry. Authority to the contrary could not be clearer.").

Defendants further argue that Plaintiff and the class do not have standing because Plaintiff has not shown that merely sending a text message causes a cognizable, definite injury. While a plaintiff does not necessarily "automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right," a plaintiff "need not allege any *additional* harm beyond the one Congress had identified." *Spokeo*, 136 S. Ct. at 1549 (emphasis in original).

After *Spokeo*, district courts in the Eleventh Circuit, including at least one in this district, have continued to hold that the receipt of an unsolicited text message, without more, constitutes an injury. *Preman v. Pollo Operations, Inc.*, No. 6:16-cv-443-Orl-41GJK, 2018 WL 3151673, at *6 (M.D. Fla. Apr. 12, 2018) (plaintiff's injury was receiving the text messages); *Ramos v. Hopele of Fort Lauderdale, LLC*, No. 17-62100-cv, 2018 WL 1383188, at *3 (S.D. Fla. Mar. 19, 2018) (deeming defendants' motion to compel forensic examination of plaintiff's cellular phone unnecessary where defendants wanted to collect information to show an absence of any injury-in-fact because district courts have held that an injury-in-fact is shown simply by receiving the unwanted text message); *Cordoba v. DirecTV, LLC*, 320 F.R.D. 582, 594 (N.D. Ga. 2017), *appeal filed*, No. 18-12077; *Mohamed v. Off Lease Only, Inc.*, No. 15-23352-cv, 2017 WL 1080342, at *2 (S.D. Fla. Mar. 22, 2017).

Defendants argue that the aforementioned district court opinions are in error because they rely on *Palm Beach Golf Center-Boca, Inc. v. Sarris, D.D.S., P.A.*, an Eleventh Circuit case decided before *Spokeo* which held that an injury occurs when a fax is sent, without more, because sending the fax "ties up" the machine. 781 F.3d 1245, 1251-53 (11th Cir. 2015) ("This occupation of Plaintiff's fax machine is among the injuries intended to be prevented by the [TCPA] . . . ."). However, unlike a fax line, Defendants argue, a text message does not "tie up" any line.

But as noted in *Cordoba*, courts outside the Eleventh Circuit have similarly held since *Spokeo* that receipt of a text message sent in violation of the TCPA creates an injury sufficient for purpose of Article III. 320 F.R.D. at 595 (collecting cases). Moreover, the logic behind the application of *Palm Beach* to other modes of unsolicited communications, such as text messages, has been explained by other courts:

> [Defendant] maintains that . . . Plaintiff has failed to allege that the [class members] suffered anything more than a "bare procedural violation" within the meaning of *Spokeo* . . . . But the Eleventh Circuit has previously rejected the nearly indistinguishable argument that receipt of a "junk fax" sent in violation of the TCPA—even where that fax is never printed or seen by its intended recipient—constitutes sufficient harm to provide standing. As the court explained in *Palm Beach*, Congress has made clear that a plaintiff need not suffer any monetary loss in order to recover statutory damages under the TCPA; instead, because processing a junk fax renders a person's fax machine temporarily unavailable, and because the TCPA was intended in part "to protect citizens from the loss of the use of their fax machines during the transmission of fax data," the mere receipt of a junk fax is among those injuries "intended to be prevented by the statute and . . . sufficiently personal or particularized to [plaintiff] as to provide standing."
>
> Although the Eleventh Circuit has not revisited its holding in *Palm Beach* since *Spokeo* was decided, an overwhelming majority of courts . . . have continued to hold that the mere receipt of faxes, telemarketing calls, and/or text messages in violation of the TCPA constitutes sufficient harm for purposes of Article III standing. . . .
>
> The same logic applies to unsolicited telephone calls: just as a junk fax renders a fax machine temporarily unavailable, a call placed in violation of the TCPA—whether or not a person has taken any affirmative steps to avoid it . . . deprives its recipient of time, mental energy, and privacy. Indeed, in enacting the TCPA,

6

> Congress made specific findings that "unrestricted telemarketing can be an intrusive invasion of privacy" and a "nuisance," and gave consumers a private right of action to redress this harm even where they have suffered no monetary loss. Thus, the Court finds that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," and that a plaintiff alleging a violation under the TCPA therefore need not "allege any additional harm beyond the one Congress has identified" in order to establish Article III standing.

*Id.* at 595-96 (internal citations omitted). *See also Mohamed*, 2017 WL 1080342, at *1-2 ("Though *Spokeo* cautioned that actual harm may not arise from every statutory scheme, its warning does not apply here. Far from a 'bare procedural violation,' Plaintiff's case [involving unsolicited text messages and calls] involves the substantive privacy rights the TCPA was enacted to protect. What is more, the [Eleventh Circuit] has rejected claims that TCPA-related harms like Plaintiff's are de minimis." (internal citations omitted)); *Etzel v. Hooters of Am., LLC*, 223 F. Supp. 3d 1306, 1312 (N.D. Ga. 2016) ("[E]ven if Plaintiff did not incur charges because of the unwanted text, surely Plaintiff's battery was depleted and time was wasted while reading and responding to the text. Moreover, Plaintiff expressly alleged in the Complaint that he suffered 'an invasion of [ ] privacy.' Finally, even if the unwanted text did not impair the functionality of Plaintiff's cell phone, the text still intruded upon and occupied the capacity of Plaintiff's cell phone. Therefore, a caller's sending of text messages in violation of the TCPA constitutes an injury-in-fact to the recipient so as to provide Article III standing." (internal citation omitted)).

Simply, Defendants offer no reason for the Court to depart from the reasoning of its fellow district courts applying Eleventh Circuit precedent. Here, Plaintiff alleges that delivery of the text message resulted in a concrete and particularized injury to him, specifically: invasion of privacy, wasted time, unwarranted distraction, aggravation and distress, unavailability of his cellular phone while it was receiving the unauthorized text message, depletion of the cellular phone's battery, and potential financial loss in the form of increased charges from his cellular phone carrier. Plaintiff

7

further alleges that members of the class were harmed by the text message in the same manner. Plaintiff has therefore sufficiently alleged an injury in fact on behalf of himself and the class. Moreover, such injury is fairly traceable to the conduct of Defendants given the allegations and evidentiary support that Defendants sent or caused the text message to be sent to Plaintiff and the class. Finally, given that each alleged violation of the TCPA is subject to statutory damages, Plaintiff's and the class's harms are likely to be redressed by a favorable judicial decision. Plaintiff and the class have standing.

### b. Adequately Defined and Clearly Ascertainable

The Eleventh Circuit has stated that "a class is not ascertainable unless the class definition contains objective criteria that allow for class members to be identified in an administratively feasible way." *Karhu v. Vital Pharm., Inc.*, 621 Fed. Appx. 945, 946 (11th Cir. 2015). A district court's task to identify class members is administratively feasible when it is a "manageable process that does not require much, if any, individual inquiry." *Id.* (internal quotation marks omitted).

Here, the class is adequately defined and clearly ascertainable: the class members are limited to subscribers of specific cellular telephone numbers to which a specific text message was delivered on a specific date. Nearly all of this information—the telephone numbers, the content of the text message, whether the message was delivered, and the date of the message—is readily determinable through the spreadsheets Plaintiff provided to the Court. Doc. 54-5; Doc. 54-6; Doc. 54-7; Doc. 54-8; Doc. 54-9.[2] Moreover, Plaintiff has explained that the identities of the individuals associated with the listed phone numbers is identifiable via an additional spreadsheet that Defendants produced to Plaintiff. Doc. 74 at p. 5; Doc. 74-1 at ¶¶ 6-7. That spreadsheet, Plaintiff

---

[2] This case, therefore, is distinguishable from *Haight v. Bluestem Brands, Inc.*, which Defendants rely on. No. 6:13-cv-1400-Orl-28KRS, 2015 WL 12830482, at *3-4 (M.D. Fla. May 14, 2015) (report and recommendation rejected plaintiff's reliance on defendant's "reasonably available computerized account records" to identify class members where plaintiff had not explained how the class could be identified pursuant to those records).

8

represents, contains additional contact information, including associated names and mailing addresses, for 99.4 percent of the listed telephone numbers. Doc. 74 at p. 5; Doc. 74-1 at ¶¶ 6-7. Indeed, other courts have accepted less straightforward methods of identifying class members. *E.g.*, *Keim v. ADF MidAtlantic, LLC*, No. 12-80577-cv, 2018 WL 6333658, at *4 (S.D. Fla. Dec. 3, 2018) (subpoenaing phone carriers for records to identify subscribers of cellular telephone numbers); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-cv, 2018 WL 3145807, at *13-14 (S.D. Fla. June 26, 2018) (using cellular phone numbers to investigate additional contact information for the subscribers through use of an expert).

Defendants argue the class is not ascertainable because Plaintiff has not identified a method to determine which of the listed phone numbers were assigned to cellular phones at the time the text message was delivered. To the contrary, Plaintiff has described that class members may be objectively identified by reference to a subscriber's monthly statement which would show whether the listed phone number was associated with a cellular telephone on the date the text message was delivered.

Defendants also argue that Plaintiff does not explain how he would distinguish between those who own the cellular telephone number ("owners") and those who regularly use the cellular telephone number but who may not own it ("regular users"). Moreover, Defendants conclude, any such attempt to identify who is an "owner" and who is a "regular user" would be "fraught with individualized inquiry." Doc. 75 at p. 4. But such information could be obtained from cell phone carrier documentation, or from inquiries to subscribers. *See Keim*, 2018 WL 6333658, at *7 (carriers can identify users of each cellular phone number on an account or the information can be obtained through inquiry from the owner). There is no evidence in this case that such inquiries

9

would not be administratively feasible, and Defendants do not explain why they believe that such a process would be impermissibly "individualized."

### c. Requirements under Rule 23(a)

The Court will examine the following to determine whether this case satisfies the requirements for class certification under Rule 23(a): (1) numerosity, (2) commonality, (3) typicality and (4) adequacy. *Hines v. Widnall*, 334 F.3d 1253, 1255-56 (11th Cir. 2003).

#### i. Numerosity and Impracticability of Joinder

Rule 23 requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A plaintiff seeking class certification does not need to know the exact size of the proposed class. *See Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004). While the size of the proposed class is relevant to a court's determination, other factors such as "the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits" should also be considered. *Id*. Generally, more than forty putative class members is adequate. *Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546 (11th Cir. 1986).

Defendants argue that Plaintiff fails to establish the numerosity requirement based on the same ascertainability issues—namely, that Plaintiff is unable to show who is a class member. As discussed *supra*, however, the class members are identifiable and the class is clearly defined and ascertainable. The record similarly supports numerosity: it is known that the same text message was delivered to 2,717 phone numbers on a certain date. Doc. 54 at p. 7. The only remaining question is whether the phone numbers the text message was delivered to were assigned to cellular phones. But even assuming *arguendo* that only four percent of those telephone numbers were

assigned to cellular phone numbers, the class would still be well over forty. *See* Doc. 59 at p. 9 (Defendants' sample suggesting that six of ten listed phone numbers were not cellular phone numbers based on "public record services"). As to the additional considerations, Plaintiff indicates that the text message was sent to phone numbers associated with locations throughout the United States, and class members would likely not initiate individual lawsuits given the statutory amount and single alleged violation. Plaintiff has satisfied Rule 23(a)'s numerosity requirement.

### ii. Common Questions of Law and Fact

The commonality requirement typically "refers to the group of characteristics of the class." *Prado-Steiman*, 221 F.3d at 1279. To satisfy the commonality requirement, "a class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). However, it is not necessary that all members of the class have identical claims. *Prado-Steiman*, 221 F.3d at 1279, n. 14. Commonality, like typicality, focuses "on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members." *Id*. at 1278.

Defendants contend that Plaintiff fails to meet the commonality requirements because some proposed class members lack standing, and determining standing for the remaining class members requires impermissible individualized inquiries. As discussed *supra*, however, Plaintiff need not prove the standing of every proposed class member at this stage. Moreover, there is no evidence that inquiries related to standing would be unfeasible or impermissibly individualized.

A sufficient nexus exists here between Plaintiff and the class members. Plaintiff asserts common questions of fact among the class members, to whom the same text message was delivered at the same time. The common legal questions include whether Defendants violated the TCPA

when they sent the class members the text message. Plaintiff has thus satisfied Rule 23(a)'s commonality requirement.

### iii. Typicality

"The typicality requirement is satisfied if 'the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory.'" *Agan*, 222 F.R.D. at 698 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). Even if the fact patterns are unique to each claim, if the class representative and class members experienced the same unlawful conduct, the typicality requirement will be satisfied. *Id.* at 698.

Defendants argue that Plaintiff fails to show he is "typical" of the class because it is not clear that he was a "subscriber" as his June phone bill is addressed to the name of his company, Angies's Transportation. Doc. 59-1. But the phone bill is also addressed to Plaintiff. Doc. 59-1. Moreover, Plaintiff is listed as the user of the cellular phone number to which the text message was delivered.

Here, the legal theory underlying Plaintiff's and the class's claim are very similar, if not identical: they arise from the same conduct, the legal bases are the same, and the facts are similar (if not identical). Plaintiff has satisfied Rule 23(a)'s typicality requirements.

### iv. Adequacy of Protection of Class Interests

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." There are two separate inquiries under this section: (1) whether there are any substantial conflicts of interest between the named representatives of the class and the class members; and (2) whether the representatives will adequately prosecute the action. *See Busby*, 513 F.3d at 1323 (citing *Valley Drug Co.*, 350 F.3d at 1189). This requirement serves to uncover any

conflict of interest that named parties may have with the class they represent. *See Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 627 (1997). Under this section, the Court must also consider the competency and any conflicts that the class counsel may have. *See id.* at 626, n. 20.

Defendants do not argue that any conflict of interest exists between Plaintiff and the class members. Moreover, it appears that Plaintiff will adequately prosecute this action. *See* Doc. 54-1. Plaintiff has satisfied Rule 23(a)'s adequacy requirement. And the record supports that Plaintiff's counsel would be adequate class counsel: Cory Fein has experience litigating various class action lawsuits and courts have approved him as counsel in previous actions. *See* Doc. 54-3.

### d. Requirements under Rule 23(b)

Plaintiff argues certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3). To satisfy the class certification requirement under Rule 23(b)(3), common questions must predominate over questions that affect only individual members and the class action must be a superior method for "fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Thus, Rule 23(b)(3) requires a showing of predominance and increased efficiency (superiority).

#### i. Predominance

The issues raised in the class action that are subject to generalized proof and that are applicable to the class as a whole "must predominate over those issues that are subject only to individualized proof." *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (quoting *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989)). "Common issues will not predominate over individual questions if, 'as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'" *Id.* at 1191 (quoting *Andrews v. Am. Tel. & Tel. Co.,* 95 F.3d 1014, 1023 (11th

13

Cir. 1996)). The Court should not certify a class if it appears that most of the plaintiff's claims have highly case-specific factual issues. *See id*.

Here, the class claims predominate over any individual legal and factual issues. The class is limited to facts concerning the delivery of one text message on one date. The central common issues in this case are whether Defendants used an ATDS to send the text message, and, if so, whether Defendants' actions were willful. These common issues predominate over other questions such as whether certain listed telephone numbers are associated with cellular phones. And, the common issues may be decided uniformly for all class members. Therefore, Plaintiff has met this requirement.

### ii. Superiority of Class Action

Rule 23 requires a finding that "[the] class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court looks to the four non-exclusive factors listed in Rule 23(b)(3):

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id*.

It is unlikely that the individual class members would have any interest in instituting a lawsuit or in controlling their own individual actions given the modest statutory recovery available and the mostly-indistinguishable fact pattern applicable to the claims. The alternative—having numerous individual claims for damages arising out of the same conduct—would be neither

14

efficient nor fair to Defendants or the class members given the circumstances of the case. Moreover, neither party offers evidence that any class member has separately begun any litigation. Finally, difficulties in managing a class action such as this one would likely be minimal. Plaintiff has established the requirements of Rule 23(b)(3).

**Accordingly, it is ORDERED**:

1. Plaintiff's Motion for Class Certification (Doc. 54) and Supplement to Motion for Class Certification (Doc. 74) are **GRANTED**.

2. The Court certifies the following class:

> All cellular telephone subscribers in the United States who had a phone number listed in the Call Logs (filed at Docket Nos. 54-5 through 54-9), where the Call Logs' entry for the phone number reflects that the June 30, 2017 "Obama Care" text message was "delivered" in the "Status" column; and where the phone number was assigned to a cell phone (as opposed to a landline or VoIP line) on June 30, 2017.

3. The Court approves John Northrup as Class Representative and his counsel, Cory S. Fein, as Class Counsel.

4. The parties are provided thirty (30) days from the date of this Order to confer on a class notice plan and issues that may arise associated with the administration of the class, including the form and content of the notice, and the establishment of an opt-out period and procedure, and shall advise the Court of these efforts and whether there are issues that require the Court's resolution.

**DONE AND ORDERED** in Tampa, Florida on January 2, 2019.

Charlene Edwards Honeywell
United States District Judge

Copies to:

Counsel of Record and Unrepresented Parties, if any