**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JOHN NORTHRUP, individually and on
behalf of a class of similarly situated
individuals,

      Plaintiff,

v.                                Case No: 8:17-cv-1890-T-36JSS

Innovative Health Insurance Partners, LLC;
CyberX Group, LLC; David E. Lindsey; and
Independent Truckers Group, Inc.,

      Defendants.

_____/

# O R D E R

This cause comes before the Court upon Defendants' Motion for Summary Judgment (Doc. 63), Plaintiff's response in opposition (Doc. 68), and the parties' Stipulation of Agreed Material Facts (Doc. 67). Defendants argue they are entitled to summary judgment on Plaintiff's Telephone Consumer Protection Act claims because the text message at issue was not sent with an automatic telephone dialing system as defined by the statute. The Court, having considered the parties' submissions and being fully advised in the premises, will deny, without prejudice, Defendants' Motion for Summary Judgment.

## I.    STATEMENT OF FACTS[1]

Plaintiff, John Northrup ("Plaintiff"), on behalf of himself and all others similarly situated, brings this action against Defendant Innovative Health Insurance Partners, LLC ("Innovative Health"), Defendant CyberX Group, LLC ("CyberX"), Defendant David E. Lindsey ("Lindsey"),

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations and exhibits, as well as the parties' Stipulation of Agreed Material Facts ("SF") (Doc. 67).

and Defendant Independent Truckers Group, Inc. ("Independent Truckers") (collectively, "Defendants"), for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 *et seq*. Plaintiff's claims stem from a text message sent to his cellular telephone number, which he received on June 30, 2017 at 2:40 p.m. eastern time. Doc. 38 at ¶ 32; SF at ¶¶ 1, 7. The text message read as follows: "Hate the high price of Obama Care? Call for a free $250 rewards card and free healthcare quote. TRUCKER plans start less than $59 a month. 214-396-6822." SF at ¶ 7.

The text message was related to a healthcare product maintained by Independent Truckers. *See* SF at ¶ 4. Independent Truckers had outsourced the functions related to the product to Innovative Health. SF at ¶ 4. Innovative Health, in turn, decided to market Independent Truckers and its healthcare product via text message. SF at ¶ 5. To accomplish this, Innovative Health contracted with CyberX to execute the campaign and send the text message. SF at ¶ 5.

Innovative Health drafted the content of the text message, and CyberX purchased phone numbers from a third-party company. SF at ¶¶ 3, 6. CyberX caused the text message to be sent to the purchased phone numbers (including Plaintiff's cell phone number) through a web-based software application. SF at ¶¶ 1-3. The application, the Twilio Platform ("Twilio"), allows the user of the application to direct Twilio to send text messages to specific phone numbers as provided by the user. SF at ¶ 2.

CyberX provided the purchased phone numbers to Twilio and directed Twilio to send text messages to those phone numbers. Doc. 63-1 (the "Pearson Declaration")[2] at ¶ 5; SF at ¶ 3. Twilio did not generate the phone numbers. Pearson Decl. at ¶¶ 4-6. Each text message sent by Twilio requires the user to provide a separate instruction including (1) the Twilio number from which the

_____

[2] The Pearson Declaration is executed by Christopher Pearson, the co-owner and president of Cyber-X. Pearson Decl. at ¶ 1.

message should originate; (2) the body of the text message; and (3) the telephone number that the text message should be sent to. Pearson Decl. at ¶ 7.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine" only if a reasonable jury, considering the evidence present, could find for the nonmoving party, and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 Fed. Appx. 852, 858 (11th Cir. 2006).

After a party moves for summary judgment, the non-movant "bears the burden of calling to the district court's attention any outstanding discovery." *Cowan v. J.C. Penney Co., Inc.*, 790

F.2d 1529, 1530 (11th Cir. 1986). If the court is convinced that discovery is inadequate, it should

deny summary judgment. *See Blumel v. Mylander*, 919 F. Supp. 423, 428 (M.D. Fla. 1996). As

Rule 56 implies, district courts should not grant summary judgment until the non-movant "has had

an adequate opportunity for discovery." *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859

F.2d 865, 870 (11th Cir. 1988); *see also McCallum v. City of Athens*, 976 F.2d 649, 650 (11th Cir.

1992) (noting that a party may move for summary judgment only after exchanging "appropriate"

discovery). Indeed, "[t]he whole purpose of discovery in a case in which a motion for summary

judgment is filed is to give the opposing party an opportunity to discover as many facts as are

available and he considers essential to enable him to determine whether he can honestly file

opposing affidavits." *Blumel*, 919 F. Supp. at 428 (quoting *Parrish v. Bd. of Comm'rs of the Ala.

State Bar*, 533 F.2d 942, 948 (5th Cir. 1976)). The Court must be fair to both parties, which means

it must allow for an adequate record prior to considering a motion for summary judgment. *Id.*

## III.   DISCUSSION

The TCPA protects individual consumers from receiving intrusive and unwanted phone

calls. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The TCPA prohibits[3] any person

from "mak[ing] any call[4] (other than a call made for emergency purposes or made with the prior

express consent of the called party) using any automatic telephone dialing system [("ATDS")] or

an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone

service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which has

---

[3] A party contacted in violation of the TCPA may recover, for each such violation, the greater of his or her actual monetary losses or $500 in damages, and the Court, in its discretion, may "increase the amount of the award to an amount equal to not more than 3 times the amount available" if it finds that the defendant's violation of the TCPA was willful or knowing. 47 U.S.C. § 227(b)(3)(B)-(C).

[4] Under the TCPA, a text message is a call. *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) ("The prohibition against auto dialed calls applies to text message calls as well as voice calls." (citing *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act. of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003))). Final FCC orders are binding on district courts, and district courts "may not determine the validity of FCC orders, including by refusing to enforce an FCC interpretation . . . ." *Murphy*, 797 F.3d at 1307.

the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* at § 227(a)(1).

The statutory definition of an ATDS "naturally raises two questions: (i) when does a device have the 'capacity' to perform the two enumerated functions; and (ii) what precisely are those functions?" *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 695 (D.C. Cir. 2018). Since the TCPA's enactment in 1991, the Federal Communications Commission (the "FCC")—the agency charged with promulgating TCPA regulations—has set forth a number of rules and decisions attempting, in part, to resolve such questions. *Id.* at 693, 701, 712 (citing *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act. of 1991*, 18 FCC Rcd. 14014 (2003); *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act. of 1991*, 23 FCC Rcd. 559 (2008); *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act. of 1991*, 27 FCC Rcd. 1830 (2012); *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act. of 1991*, 30 FCC Rcd. 7961 (2015)).

The 2015 FCC order sought, in part, to further explain what devices for making calls qualified as an ATDS. *Id.* at 693. The 2015 FCC order addressed at least two things in this respect. First, it "declined to define a device's 'capacity' in a manner confined to its 'present capacity'" and instead construed the term "capacity" to include a device's "potential functionalities" such as those enabled with software modifications. *Id.* at 693-94. Second, it addressed what functions a device should need to perform for it to be considered an ATDS. *Id.* at 694. It explained that the basic function of an ATDS is to "dial numbers without human intervention." *Id.* Yet, the FCC declined to confirm that an ATDS is not an ATDS unless it has the ability to dial numbers without human intervention. *Id.*

On March 16, 2018, the D.C. Circuit in *ACA Int'l* set aside the FCC's 2015 ruling in part. The *ACA Int'l* court held that the FCC's interpretation of "capacity" was unreasonably expansive because it would mean that all smartphones could qualify as ATDSs, given that smartphones have the ability to "gain ATDS functionality by downloading an app." *Id.* at 700.

The *ACA Int'l* court also held that the FCC's functionality explanation was inadequate because it offered competing interpretations regarding "whether a device must *itself* have the ability to generate random or sequential telephone numbers to be dialed," or whether it was "enough if the device can call from a database of telephone numbers generated elsewhere." *Id.* at 701 (emphasis in original). The FCC's 2015 order had impermissibly determined both (1) that equipment is an ATDS only if it generates and dials random or sequential numbers and (2) that equipment is an ATDS if it lacks the capacity to generate and dial random or sequential numbers. *Id.* at 702-03 ("It might be permissible for the [FCC] to adopt either interpretation. But the [FCC] cannot, consistent with reasoned decisionmaking, espouse both competing interpretations in the same order."). Similarly contradictory, the *ACA Int'l* court noted, was the FCC's explanation that the basic function of an ATDS was to dial without human intervention and its simultaneous refusal to confirm that an ATDS is not an ATDS unless it has the ability to dial without human intervention. *Id.* at 703 ("Those side-by-side propositions are difficult to square.").

Defendants argue that they are entitled to summary judgment on Plaintiff's TCPA claims because the text message was not sent with an ATDS. Defendants argue that pursuant to *ACA Int'l*, an ATDS is a device with the current capacity to generate and call random or sequential numbers. Defendants argue Twilio is not an ATDS because it cannot store or produce phone numbers to be called using a random or sequential number generator. Because Plaintiff cannot show that Twilio

is an ATDS, Defendants argue, Plaintiff cannot prove its TCPA claims against Defendants and Defendants are entitled to judgment in their favor.

In response, Plaintiff argues that Defendants fail to conclusively establish that Twilio is not an ATDS. Plaintiff argues that the key factor in determining whether a device is an ATDS is the amount of human intervention required. Plaintiff further argues that Defendants misinterpret caselaw concerning ATDSs and ignore other legal authority contrary to their position. Moreover, Plaintiff urges the Court to deny Defendants' motion as premature because it was filed several months before the discovery deadline and before Plaintiff had the opportunity to conduct any meaningful discovery on the merits.

The parties' incompatible legal positions concerning the meaning of ATDSs are indicative of the conflicts courts have encountered since the D.C. Circuit decided *ACA Int'l*. Courts within the Eleventh Circuit, for example, have differed as to whether the D.C. Circuit weighed in on the correct interpretation of ATDS functionality, or whether the D.C. Circuit merely decided that the FCC's 2015 analysis was inappropriate. *Compare Glasser v. Hilton Grand Vacations Co., LLC*, No. 8:16-cv-952-27AAS, 2018 WL 4565751, at *6 (M.D. Fla. Sept. 24, 2018), *appeal filed*, No. 18-14947 ("*ACA Int'l* makes it clear that an [ATDS] must *both* generate the numbers and dial them.") *with Reyes v. BCA Fin. Servs., Inc.*, 312 F. Supp. 3d 1308, 1318 (S.D. Fla. 2018) ("[T]he D.C. Circuit explained that while the 2015 ruling indicates in certain places that a device must be able to generate and dial random or sequential numbers to meet the TCPA's definition of an [ATDS], it also suggests a competing view: that equipment can meet the statutory definition even if it lacks that capacity. . . . The D.C. Circuit did not reject one view or the other. Rather, it recognized that either interpretation might be permissible but disapproved the FCC's Janus-like approach." (citation omitted, alteration deleted)).

7

Moreover, since the *ACA Int'l* decision, courts "have reached differing conclusions as to the decision's impact on FCC Orders issued prior to 2015." *Whitehead v. Ocwen*, No. 2:18-cv-470-FtM-99MRM, 2018 WL 5279155, at *3 (M.D. Fla. Oct. 24, 2018). That is, courts now differ as to whether they should look beyond the statutory definition of an ATDS for guidance. *Compare Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018) ("In light of the D.C. Circuit's holding, we interpret the statutory definition of an [ATDS] as we did prior to the issuance of the 2015 Declaratory Ruling.") *with Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1049 (9th Cir. 2018) ("[O]nly the statutory definition of ATDS as set forth by Congress in 1991 remains.")

A few cases[5] since *ACA Int'l* have dealt specifically with devices that send text messages in a manner similar to how the parties allege the text message at issue here was sent. *E.g.*, *Dominguez*, 894 F.3d at 119-21 (affirming a district court order granting summary judgment to the defendant on the basis that the text messaging device at issue was not an ATDS because the device did not have the capacity to generate random or sequential telephone numbers and dial those numbers); *Ramos v. Hopele of Ft. Lauderdale, LLC*, 334 F. Supp. 3d 1262, 1265, 1275 (S.D. Fla. 2018), *appeal filed*, No. 18-14456 (granting summary judgment for the defendant on the basis that the text messaging platform at issue was not an ATDS because a certain level of human intervention was required to send the text message).

Defendants rely on a case from the District of Arizona that granted summary judgment to the defendant on the basis that the text messaging platform, 3Seventy, was not an ATDS because

---

[5] Since *ACA Int'l*, other district courts within the Eleventh Circuit have dealt with the issue of whether a predictive dialer—"equipment that can dial automatically from a given list of telephone numbers using algorithms to predict when a sales agent will be available," *ACA Int'l*, 855 F.3d at 694,—or a point and click device—requiring an agent to click a "make a call" button to initiate a call, *Glasser*, 2018 WL 5279155, at *1,—are ATDSs. *See Gonzalez v. Ocwen Loan Servicing, LLC*, No. 5:18-cv-340-Oc-30PRL, 2018 WL 4217065, at *7, n. 9 (M.D. Fla. Sept. 5, 2018) (predictive dialer); *Glasser*, 2018 WL 5279155 at *1 (point and click device was not an ATDS because human intervention was required); *Reyes*, 312 F. Supp. 3d at 1310 (predictive dialer was an ATDS). The Eleventh Circuit has not issued an opinion on the subject since the *ACA Int'l* decision, though multiple appeals are now pending.

it could not randomly or sequentially generate numbers and because it required a certain level of human intervention. *Herrick v. GoDaddy.com LLC*, 312 F. Supp. 3d 792, 793, 800, 803 (D. Ariz. 2018). But whether *Herrick*, decided in May 2018, is still good law in the Ninth Circuit is unclear in light of the Ninth Circuit's September 2018 ruling in *Marks*. 904 F.3d at 1043-53 (analyzing anew the statutory definition of an ATDS and determining that ATDS "means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)" and reversing the district court, which had granted summary judgment to the defendant on the basis that the text messaging platform was not an ATDS because it lacked the capacity to store or produce telephone numbers to be called using a random or sequential number generator).[6]

Despite the parties' differing positions and the conflicting case law on the subject, the Court need not decide at this time whether Twilio qualifies as an ATDS to resolve Defendants' motion. Defendants have not provided sufficient evidence to show that there is no genuine issue of material fact regarding whether Twilio is or is not an ATDS, regardless of how case law on the matter is interpreted. Moreover, Plaintiff had not had a reasonable opportunity to conduct discovery at the time Plaintiff responded to the motion for summary judgment.  Therefore, Defendants' motion for summary judgment is due to be denied.

Notwithstanding the conflicting legal principles concerning the meaning of an ATDS, the aforementioned cases before district courts on motions for summary judgment are relevant and distinguishable from the case here. The parties in those cases had gathered considerable evidence,

---

[6] Most recently, after *Marks*, the FCC issued a public notice requesting comment on what constitutes an ATDS. Fed. Commc'ns Comm'n, *Consumer and Governmental Affairs Burau Seeks Further Comment on Interpretation of the Telephone Consumer Protection Act in light of the Ninth Circuit's* Marks v. Crunch San Diego, LLC *Decision*, FCC.gov, https://ecfsapi.fcc.gov/file/10032573521648/DA-18-1014A1.pdf (Oct. 3, 2018).

and those cases thus demonstrate by comparison why Defendants are not entitled to summary judgment here. *See, e.g.*, *Ramos*, 334 F. Supp. 3d at 1267-68 (evidence described in detail how defendant's manager signed into the EZ-Texting system, created a list, uploaded an excel spreadsheet, wrote a message, programmed the date and time of delivery, and hit "send"); *Herrick*, 312 F. Supp. 3d at 792-93, n. 1 (3Seventy's CEO and corporate representative provided details about 3Seventy's operation, and described exactly how the defendant provided 3Seventy with a list of phone numbers and confirmed that it wanted 3Seventy to send the text message). Indeed, in *Herrick*, the district court had specifically ordered such discovery for the purpose of determining whether 3Seventy was an ATDS. *Id.* at 794.

By contrast, the Pearson Declaration provides only a few vague statements about how CyberX used Twilio. Pearson Decl. at ¶¶ 2, 4-5, 8. It generally describes how Twilio operates from the viewpoint of the user: "Each and every text message sent by [Twilio] requires a separate instruction comprising (1) the Twilio number from which the message should originate; (2) the body of the text message; and (3) the telephone number to which the user want [sic] that text message sent." Pearson Decl. at ¶ 7. But Defendants' evidence does not describe *how* CyberX provided the phone numbers to Twilio or further describe the instructions it allegedly gave to Twilio to send the text message.[7]

That Defendants' evidence is insufficient supports Plaintiff's position that summary judgment is premature at this time. Defendants filed the instant motion for summary judgment more than seven months before the close of discovery and more than eight months before the dispositive motion deadline. *See* Doc. 48. And, Plaintiff alleges that the discovery it did conduct

---

[7] The only other evidence Defendants provide is a copy of Twilio's terms and conditions, offered to show that Defendants had agreed not to modify Twilio and thus could not have engineered it to have the capacity to generate and call random or sequential numbers, a function CyberX's co-owner and president avers Twilio did not have. Pearson Decl. at ¶ 6.

prior to then was focused on class-certification. Doc. 68 at p. 3; Doc. 68-1. Thus, even if Defendants had provided sufficient evidence, the Court could not grant summary judgment in such a case where Plaintiff has convinced the Court that it has not had an adequate opportunity for discovery.

Defendants cannot establish the absence of a genuine issue of material fact with its current evidence, nor can it do so without the non-moving party having had the opportunity to conduct discovery. Therefore, Defendants' summary judgment motion will be denied, as it is premature. The parties may move for summary judgment at a later stage in these proceedings, but prior to the dispositive motion deadline.

**Accordingly, it is ORDERED**:

1.     Defendants' Motion for Summary Judgment (Doc. 63) is **DENIED** without prejudice.

**DONE AND ORDERED** in Tampa, Florida on January 3, 2019.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

11