# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

| | | |
|---|---|---|
| JOHN NORTHRUP, Individually and on behalf of a Class of Similarly Situated Individuals | § § § | |
| Plaintiff, | § | Civil Action No. 8:17-cv-01890-CEH-JSS |
| v. | § § § | |
| Innovative Health Insurance Partners, LLC, CyberX Group, LLC, David E. Lindsey; and Independent Truckers Group, Inc.; | § § § § | |
| Defendants. | § § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S THIRD MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

The Court should deny Defendants' third summary judgment motion because Plaintiff received more than one text message from Defendants, *Salcedo* was wrongly decided and is pending an *en banc* review, and because Plaintiff experienced a concrete injury resulting from an invasion of privacy that would be highly offensive to a reasonable person.

### II. DISPUTED MATERIAL FACTS

Pursuant to the Court's Order, Dkt. 48, at ¶II (H)(1), Plaintiff contends that genuine issues for trial exist with respect to whether Plaintiff has standing, the number of text messages received by Plaintiff, and whether Plaintiff experienced a concrete injury when receiving the text messages from Defendants. Plaintiff disputes the following facts that Defendants alleged were undisputed:

1. Plaintiff disputes that he received only one text message from Defendants. Although he received a single text message from Defendants on June 30, 2017, at 2:40 pm

Eastern time, he received a second text message from Defendants about 14 minutes later, at 2:54 pm. *See* Exhibit A, Fein Declaration at ¶4. To the extent the Court holds that a single text is insufficient to create standing, Plaintiff seeks leave to amend his pleadings to allege the second text message.

2. Plaintiff disputes that he was doing nothing other than looking at his cellular telephone when he received the first text message from Defendants, and disputes that he has no recollection of his actions for the hour prior to receiving the text message. While he looked at his phone when he was alerted about the receipt of the text message, at that time he was trying to perform maintenance on his tractor-trailer and was distracted from his work by the text messages. (Dkt. 36-1 at ¶ 3.) Also, while he does not recall exactly what he was doing for the hour prior to receiving the text message, he recalls generally that he was performing maintenance on his tractor-trailer and was distracted from his work by the text messages. (*Id*.) Plaintiff is a truck driver and maintaining his tractor-trailer is part of his job. He also took additional time away from his work to respond to the text messages to try to figure out how the sender got his information, and was treated rudely by the person who answered the phone number advertised by the text message. (*Id*. at ¶5.)

### III.  ARGUMENT

#### A.  *Salcedo* was wrongly decided and is pending *en banc* review

Plaintiff believes that the August 2019 *Salcedo* opinion was wrongly decided. A petition for rehearing *en banc* was filed on September 18, and *amicus* briefs are being filed by the Consumer Federation of America, Electronic Privacy Information Center, National Association of Consumer Advocates, and National Consumer Law Center. *See* Exhibit B, Eleventh Circuit docket from *Salcedo v. Hanna*, 936 F.3d 1162, 2019 U.S. App. LEXIS 25967 (11th Cir. Aug. 28,

2019).

The *Salcedo* panel specifically rejected the Ninth Circuit's opinion in *Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co.*, 847 F.3d 1037, 1040 (9th Cir. 2017). *Salcedo*, 2019 U.S. App. LEXIS 25967 at **13-14. Plaintiff believes the Eleventh Circuit, on *en banc* review, will follow the better-reasoned opinion of the Ninth Circuit in *Van Patten*.

> Congress aimed to curb telemarketing calls to which consumers did not consent by prohibiting such conduct and creating a statutory scheme giving damages if that prohibition was violated. Unlike in *Spokeo* [*v. Robins*, 136 S. Ct. 1540 (2016)], where a violation of a procedural requirement minimizing reporting inaccuracy may not cause actual harm or present any material risk of harm, *see id.* at 1550, the telemarketing text messages at issue here, absent consent, present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA. Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA "need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549 (emphasis in original). . . . We hold that Van Patten alleged a concrete injury in fact sufficient to confer Article III standing.

*Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co.*, 847 F.3d 1037, 1043 (9th Cir. 2017).

At a minimum, the Court should not grant summary judgment until the Eleventh Circuit's ruling in *Salcedo* is final and/or the Supreme Court resolves the split in authority or denies granting *certiorari*.

### B. Plaintiff's case is distinguishable from *Salcedo*.

Even if *en banc* review and *certiorari* are denied and the August 2019 *Salcedo* opinion remains the law in the Eleventh Circuit, Plaintiff's case is distinguishable from *Salcedo* because Plaintiff received more than one text message, Plaintiff experienced concrete damages, Plaintiff had no relationship with Defendants and never provided his phone number to them, and because Defendants' conduct constituted an invasion of privacy that would be highly offensive to a reasonable person.

3

### 1. Plaintiff received more than one text message.

First, unlike the plaintiff in *Salcedo*, Plaintiff received two text messages from Defendants, on June 30, 2017, one at 2:40 pm, and a second text message from Defendants about 14 minutes later, at 2:54 pm. *See* Exhibit B, Fein Decl. at ¶3.

The *Salcedo* opinion placed great emphasis on the fact that there was ***only one*** text message sent. The Court stated the question at issue was: "Is receiving a ***single*** unsolicited text message, sent in violation of a federal statute, a concrete injury in fact that establishes standing to sue in federal court?" *Salcedo*, 2019 U.S. App. LEXIS 25967 at *1. (emphasis added). It mentioned the fact that there was only a single text multiple times. *Id.* at *7 ("… the one text message…"); *Id.* at *10 ("… the receipt of a single text message…"); *Id.* at *12 ("…a single unwelcome text message…"); *Id.* at *16 ("…simply sending one text message…"); *Id.* at *19 ("…receiving a single text message…"); *Id.* at *20 ("harm he suffered from receiving a single text message…"); *Id.* at *22 ; and (from Pryor's concurring opinion, "I write separately to emphasize my understanding that the majority's holding is narrow and the conclusion that Salcedo lacks standing is driven by the allegations in his complaint that Hanna sent him only one text message.")

Unlike in *Salcedo*, the present case involved two text messages.

### 2. Plaintiff alleged specific concrete damages.

Additionally, Plaintiff has alleged more specific concrete damages than the plaintiff in *Salcedo*, including taking him away from his work activities and causing him to make a phone call in response to the text messages to ascertain how his phone number was obtained. *See* Section II, above, and the Amended Complaint. (Dkt. 38 at ¶44.) At the time Plaintiff John Northrup received the text messages as issue in this case, he made a living driving a truck and he

did not give out his cell phone number freely, relying on it for important work calls. (Exhibit B, Fein Decl. ¶7.) To the extent the Court finds the allegations are not specific enough, Plaintiff seeks leave to plead more detail about the concrete damages.

### 3. Plaintiff experienced a serious and universally condemnable invasion of privacy that would be highly offensive to a reasonable person.

*Salcedo* emphasized that it was important to analyze whether the invasion of privacy would be "highly offensive to a reasonable person," and that "a plaintiff might be able to establish standing where an intrusion on his privacy is objectively serious and universally condemnable." *Id*. at *15. It found no support for a concrete injury because the plaintiff "has not alleged anything like enjoying dinner at home with his family and having the domestic peace shattered by the ringing of the telephone." *Id*. at **18-19. This caused the court to compare it to "walking down a busy sidewalk and having a flyer briefly waived in one's face." *Id*. at *19.

Unlike the plaintiff in *Salcedo*, Plaintiff did experience an objectively serious and universally condemnable intrusion. If the baseline example for a concrete injury is a ringing phone interrupting dinner at home, Plaintiff easily meets that standard by the repeated interruption of his trying to earn a living as a truck driver, which was more serious than a phone call during dinner. Additionally, Defendants sent the text messages from a texting service that used a fake area code, and the first text included a political message related to Obama Care as a ploy to sell Defendants' dubious health insurance products to truck drivers. (Dkt. 38 at ¶33.)

The text message in *Salcedo* was from a lawyer to a former client who willingly gave that lawyer his cell phone number in the past and had a relationship with him. By contrast, in the present case, Plaintiff never gave Defendants his phone number or had a relationship with them. (Dkt. 38 at ¶33.) Defendants presumably obtained Plaintiff's cell phone number through a

service that helps marketers target truck drivers, and harvests phone numbers from the website of the U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA). (*See* Exhibit A, Fein Decl. ¶5.) FMCSA maintains information regarding truck drivers (often including their cell phone numbers) and makes it available to the public for purposes of public safety via its website, https://safer.fmcsa.dot.gov, and not for purposes of allowing marketers to send unsolicited text messages to truck drivers. (*Id*.) In fact, the same website where Defendant obtained the cell phone numbers of Plaintiff and the other class members contains FMCSA's rules that restrict texting and the use of hand-held mobile phones by truck and bus drivers while operating a CMV (i.e., a commercial motor vehicle) (*Id*.) FMCSA's website notes that its research "shows the odds of being involved in a safety-critical event (e.g., crash, near-crash, unintentional lane deviation) are 23.2 times greater for CMV drivers who text while driving than for those who do not." (*Id*.) It states: "Texting drivers took their eyes off the forward roadway for an average of 4.6 seconds. At 55 mph, this equates to a driver traveling 371 feet, or the approximate length of a football field (including the end zones)—without looking at the roadway!" (*Id*.) It states: "Texting while driving can result in driver disqualification. Penalties can be up to $2,750 for drivers and up to $11,000 for employers who allow or require drivers to use a hand-held communications device for texting while driving." (*Id*.) It warns: "Simply do not type or read a text message while driving a CMV!" (*Id*.)

Accordingly, the circumstances of the text messages sent to Plaintiff are distinguishable from those at issue in *Salcedo*, and constitute an objectively serious and universally condemnable intrusion, beyond that of texting a person during dinner. To borrow the analogy from *Salcedo*, it was not like Defendants briefly waived a flyer in Plaintiff's face while he was "walking down a

busy sidewalk." Rather, it was more like Defendants targeted Plaintiff by improperly obtaining his location from a government database, then waived a flyer in Plaintiff's face, twice, while he was at work, actively trying to repair the vehicle upon which he relied to make a living.

WHEREFORE Plaintiff prays that the Court deny Defendants' Motion for Summary Judgment.

Date: October 18, 2019.

                                              Respectfully submitted,

                                              /s/ Cory S. Fein
                                              Cory S. Fein (*Pro Hac Vice)*
                                              E-mail: cory@coryfeinlaw.com
                                              CORY FEIN LAW FIRM
                                              712 Main St., #800
                                              Houston, TX  77002
                                              Telephone:  (281) 254-7717
                                              Facsimile:  (530) 748-0601


                                              Seth M. Lehrman (Fla. Bar No. 132896)
                                              E-mail: seth@epllc.com
                                              EDWARDS POTTINGER LLC
                                              425 North Andrews Avenue, Suite 2
                                              Fort Lauderdale, FL 33301
                                              Telephone: (954) 524-2820
                                              Facsimile: (954) 524-2822

                                              *Attorneys for Plaintiff*